IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JIANGMEN KINWAI FURNITURE DECORATION CO. LTD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-689 |
| | ) | |
| IHFC PROPERTIES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This is a dispute over who breached a lease of showroom space used at the High Point Furniture Market. Well into the discovery period, the plaintiff-tenant, through counsel Venus Springs, initiated a series of discovery procedures seeking to obtain voluminous materials and information about entities that own or are affiliated with the defendant-landlord. The landlord and other subpoenaed entities have shown that the discovery is not likely to lead to admissible evidence, harassing, overbroad, and unduly burdensome. The tenant has shown no justification for the discovery. At the conclusion of a hearing on these motions, the Court issued protective orders and required the tenant to pay reasonable costs and expenses. This Order memorializes that decision.

## I.      BACKGROUND

The plaintiff, Jiangmen Kinwai Furniture Decoration Co. Ltd, ("Kinwai"), sued the defendants IHFC Properties, LLC, and Zuo Modern Contemporary, Inc., in August

2014, alleging that it entered into a valid lease with IHFC for showroom space and that IHFC breached the lease by moving Kinwai to a different location within the building, by constructively evicting Kinwai from the leased space, and by breaching the duty of good faith and fair dealing arising out of the lease. (*See* Doc. 1 at ¶¶ 7-13, 51-71.) Kinwai further alleged that Zuo sought to have Kinwai removed from the leased space so it could move in and thereby tortiously interfered with Kinwai's contract relationships with IHFC. (*See* Doc. 1 at ¶¶ 20-23, 35-37, 78-82; *see also* Doc. 37 at 3.) Finally, Kinwai alleged that IHFC and Zuo violated North Carolina's Unfair and Deceptive Trade Practices Act and committed civil conspiracy. (Doc. 1 at ¶¶ 72-77, 83-85.)

The basic facts are undisputed and have been known to all parties since before the litigation began. Kinwai leased space in the International Home Furnishings Center ("IHF Center") from IHFC, the owner of the building. (Doc. 1 at ¶ 7; Doc. 23 at ¶ 7.) In the late summer of 2014, IHFC notified Kinwai that it would be moving Kinwai's space from the fifth floor of the IHF Center to the seventh floor of that building, pursuant to a relocation clause in the parties' lease. (Doc. 1 at ¶¶ 11, 15, 26-27; Doc. 23 at ¶¶ 11, 15, 26-27.) Kinwai objected to the relocation, contending that the new space was not "equivalent" to the old space as required by the relocation clause. (Doc. 1 at ¶¶ 27-28, 38-39; *see also* Doc. 4 at 1-2.) IHFC eventually moved Kinwai's personal property out of the fifth floor space. (Doc. 1 at ¶¶ 41-43; Doc 23 at ¶ 43.) Zuo moved into the fifth floor space and exhibited there during the October 2014 market. (*See* Doc. 37 at 3.)

2

Kinwai did not participate in the October 2014 market. (*See* Doc. 35 at ¶ 6; Doc. 37 at 3.) It rented space from an entity unaffiliated with IHFC for the April 2015 market and exhibited there. (*See* Doc. 35 at ¶ 12; Doc. 37 at 4; Doc. 37-1 at ¶¶ 10-11.)

The lease itself identifies Kinwai as the tenant and IHFC as the landlord. (Doc. 1-1 at 1.) IHFC has admitted that it signed the lease and has never denied the terms of the lease or that it is a party to the lease. (*See, e.g.*, Doc. 23 at ¶¶ 7-8, 26-27.) In fact, IHFC has relied on the language of the lease to defend the case from the very beginning, (*e.g.*, Doc. 6 at 1-3), and has brought counterclaims against Kinwai based on the lease. (Doc. 31 at 9-14.)

The identities of the persons acting on behalf of IHFC have been known since the beginning of the case. Kinwai's representative communicated with Richard Krapfel, the leasing agent for IHFC, and Thomas Mitchell, the president of Home Furnishings, before filing suit, (*see* Doc. 16-3 at ¶ 7; Doc. 6-1 at ¶¶ 1-3, 7; Doc. 4-6 at 1), and the relocation letter came from Mr. Krapfel's boss, Julie Messner. (Doc. 4-3; Doc. 6-1 at ¶ 3.) Sharon Cumberbatch filed an affidavit in support of IHFC's opposition to Kinwai's motion for a temporary restraining order within days of the filing of the lawsuit. (Doc. 6-3.) Both IHFC and Kinwai listed these four people as persons with relevant knowledge in their initial Rule 26 disclosures.[1] (*See* Doc. 102-17 at 1-2, 9.)

---

[1] IHFC also listed a former employee, Thomas Loney, as having knowledge, (*see* Doc. 102-17 at 2), but Mr. Loney has not been mentioned since in Court filings, so the Court will limit its discussion to the other four witnesses.

3

IHFC has put forth these persons as acting on its behalf and has never taken any position that could be construed as a denial that these persons were acting on behalf of IHFC in connection with its dealings with Kinwai and Zuo. (*See, e.g.*, Docs. 6-1, 6-3; Doc. 23 at ¶¶ 15, 24; Doc. 72-2 at 4-5, 8-11.) Kinwai has known that these persons were connected with an entity known has International Market Centers ("IMC") since at least August 1; the relocation letter from Ms. Messner was on IMC letterhead, (Doc. 4-3), Ms. Cumberbatch's first affidavit stated that she was "Director of Lease Administration for [IMC], which owns IHFC," (Doc. 6-3 at ¶ 1), and when Kinwai identified Mr. Krapfel, Ms. Messner, Ms. Cumberbatch, and Mr. Mitchell as witnesses, it explicitly associated them with IMC at a Las Vegas address. (Doc. 102-17 at 9.)

## II.      THE DISCOVERY AT ISSUE

The discovery at issue consists of, first, a deposition subpoena issued in early May 2015 by Kinwai to the Securities and Exchange Commission, (Doc. 72-1), and, second, several subpoenas duces tecum issued by Kinwai in late June 2015 to entities associated with IHFC. (Docs. 85-1 to 85-3.) Kinwai purportedly wanted the SEC to testify about a legal memorandum IHFC filed in connection with Kinwai's motion to amend, matters related to a potential public offering by IHFC's parent corporation, and other organizational and financial matters of IHFC parents and affiliates.[2] (*See* Doc. 72-1;

---

[2] The subpoena stated that the topics for the deposition were included in an attachment. (*See* Doc. 72-1 at 1, 4-6.) In the copy of the subpoena mailed to IHFC's counsel, the only document attached was a copy of a brief filed by IHFC in connection with Kinwai's motion to amend. (*Compare* Doc. 70-1, *with* Doc. 72-1; *see also* Doc. 73 at 1.) Kinwai's counsel, Ms. Springs, represented to the Court that the subpoena sent to the SEC had more attachments, including a

4

Doc. 72 at 4-6.)  Kinwai wants non-parties IMC Manager LLC, International Market

Centers, LP, and  IMC OP, LP,[3] (Docs. 85-1 to 85-3), to provide 10 categories of

documents covering everything from the purchase or transfer of ownership of any entity

that owns or owned the IHF Center to copies of internal memoranda concerning how the

IHF Center is operated to any information provided to the SEC concerning any property

the entities own in High Point, North Carolina, to a document called the "Stax Survey."

(*See, e.g.*, Doc. 85-1 at 6.)

IHFC filed a motion for protective order as to the SEC deposition subpoena, (Doc.

70), which, because of the short time frame, the Magistrate Judge granted "to the extent

that the deposition of the SEC shall be stayed until there is further proof from [Kinwai] as

to the relevancy of the deposition testimony which the party seeks."  (Doc. 75.)  Soon

thereafter, Kinwai filed the instant motion to lift this stay.  (Doc. 83.)  IHFC and the

---

page entitled "Topics of Inquiry."  (*See* Doc. 72-1 at 4-6.)  These topics are significantly broader than the matters discussed in the brief.  *See* discussion *infra*.  The Court has accepted statements of counsel as evidence when those statements related to the way discovery has been conducted, such as dates subpoenas were mailed or received, as counsel are officers of the Court stating matters within their personal knowledge.  To the extent there are conflicts and the matter is material, the Court has made credibility determinations and finds as stated herein.  Beyond these housekeeping matters, however, the Court does not consider statements of fact in briefs to be evidence unless they are supported by citation to evidence of record.  *See* L.R. 7.2; *see also Adjabeng v. GlaxoSmithKline, LLC*, No. 1:12-CV-568, 2014 WL 459851, at *3 (M.D.N.C. Feb. 5, 2014) (collecting cases holding that counsel's unsworn statements in briefs are not evidence).

[3] For convenience, the Court will refer to these three companies as "IMC" or "the subpoenaed entities."  The subpoena to IMC Manager, LLC, is found at Doc. 85-1.  The subpoena to IMC OP, LP, is found at Doc. 85-2.  The subpoena to International Market Centers, LP, is found at Doc. 85-3.  These subpoenas seek identical categories of information from each subpoenaed entity.  (*E.g.*, Doc. 85-1 at 6.)

subpoenaed entities filed a motion for protective order as to the subpoenas duces tecum. (Doc. 85.)

IHFC contends that the discovery sought by way of the SEC deposition is overbroad, harassing, unduly burdensome, and not relevant to any claim or defense. (*See* Docs. 71, 101.) IHFC and the subpoenaed entities make the same contention as to the subpoenas duces tecum and also contend that the subpoenas did not comply with various technical requirements of Rule 45. (*See* Docs. 85, 86.)

The documents and topics overwhelmingly concern transactions, finances, and operations of IHFC and various affiliated companies. (*E.g.*, Doc. 85-1 at 6.) Kinwai contends that this discovery is relevant to its effort to establish whether other entities affiliated with IHFC might also be liable to Kinwai. (*See* Doc. 84 at 5-6; Doc. 102 at 8-11; Doc. 123 at 6-7.) Specifically, Kinwai contends that it is entitled to discovery about whether Mr. Krapfel and others were acting as employees of or on behalf of other entities when they decided to and did relocate Kinwai's showroom space. (*See* Doc. 102 at 9-11.) Another document called the "Stax Survey" is included as a separate item in the subpoenas to IMC, which Kinwai says is relevant to damages. (*See* Doc. 102 at 16; Doc. 85-1 at 6; *see also* Doc. 122 at 4-5.)

## III.  ANALYSIS

### A.  Liability of Other Entities

None of the requested documents or deposition topics have even a whiff of potential relevance to the pending claims, counterclaims, or defenses in this case. Kinwai

6

has never contended that any of the documents have anything to do with the decision by IHFC to relocate Kinwai or the implementation of that decision, with the specific showroom spaces at issue, or with Kinwai's decision to refuse to accept the new space and to move their showroom to another location.  While Kinwai contends in a conclusory fashion that it needs this information to respond to summary judgment motions and for trial, (Doc. 102 at 3), it has offered no coherent explanation for this contention.  The only coherent reason proffered by Kinwai is its contention that the documents and the deposition will help it identify potential tortfeasors.  (*See* Doc. 84 at 6; Doc. 102 at 11.)

IHFC contends that to the extent the discovery seeks information about other entities that might be responsible for the actions of Mr. Krapfel and others, it cannot lead to discovery of relevant evidence because by the time Kinwai served the discovery, the Court had denied Kinwai's motion to add two IHFC affiliates as defendants and had denied Kinwai's motion to reconsider.  (*See, e.g.*, Doc. 101 at 4-6.)  Kinwai contends that it is still entitled to determine the identities of the entities that employed Mr. Krapfel and others and cites two Ninth Circuit cases in support.  (*See* Doc. 84 at 5.)

Those cases, *Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999), and *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980), involved John Doe defendants and are not exactly on point.  *See Wakefield*, 177 F.3d at 1163; *Gillespie*, 629 F.2d at 642-43.  Nonetheless, if a person has acted on behalf of or as an agent/employee of an entity and those acts give rise to possible liability of the principal/employer, then the identity of the principal has potential relevance.  *E.g.*, *Gillespie*, 629 F.2d at 642-43.  The potential is

7

reduced, however, when the Court has denied a motion to add some of the alleged principals as defendants, (*see* Doc. 41), but nonetheless the potential relevance remains.

That, however, does not mean that Kinwai is entitled to any discovery it wants simply by asserting that the information sought is relevant to employment and agency. The discovery must actually seek that information, and it must seek it in a manner that is not overbroad and not unduly burdensome or expensive, taking into account, *inter alia*, the importance of the discovery in resolving the issues in the case. *See* Fed. R. Civ. P. 26(b)(2)(C); *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). The discovery here does neither.

The deposition topics listed for the SEC are not limited to identifying the entities for which Mr. Krapfel and others worked; they are substantially broader and seek, for example, "[a]ll communications with the registrant, members of any law firms, accounting firms, engineering firms, consulting firms, and external auditors concerning the Public Registration Statement and the organizational structure and management of IMC, Inc. and any agreements or contracts between or among the related entities that affect the properties in High Point, North Carolina." (Doc. 72-1 at 6.) Kinwai has not explained how communications with law firms, auditors, and others could possibly have anything to do with identifying for whom Mr. Krapfel and others work.

To the extent the topics do address the agency-principal question, Kinwai has not explained why it has reason to believe that the SEC would know for whom, in addition to IHFC, Mr. Krapfel and others might have acted when undertaking the actions at issue

8

here. It is patently ridiculous to think that the SEC would know anything about whether these four individuals were acting as agents for IHFC or any other affiliated entity when each took actions in connection with relocation of one tenant from one small showroom[4] in the summer and fall of 2014.

Nor do the subpoenas to IMC ask for any documents concerning the employment or agency of the four individuals. (*E.g.*, Doc. 85-1 at 6.) The two items that might potentially have some connection to this issue are grossly overbroad as they are not limited to the relevant time, task, employee, or even to the IHF Center building. (*E.g.*, Doc. 85-1 at p. 6 ¶¶ 7, 8.) Such an overbroad request "unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request." *James Madison Project v. C.I.A.*, No. 1:08CV1323 (GBL), 2009 WL 2777961, at *4 (E.D. Va. Aug. 31, 2009).

In the subpoenas to IMC, Kinwai also seeks organizational documents, documents related to transactions between and among entities related to IHFC, and documents submitted to the SEC in connection with a potential public offering. (*E.g.*, Doc. 85-1 at 6.) These document requests are extraordinarily broad. For example, Kinwai defined the word "documents" to include all "drafts . . . , amendments, modifications, notes, changes or side correspondence, and each non-identical copy" and all emails. (Doc. 85-1 at 5.)

The general topics are also very broad. For example, Item 9 asks for "[a]ny Documents that [y]ou provided to the SEC concerning property in High Point, North

---

[4] The IHF Center has approximately 3.5 million square feet of showroom space. (Doc. 6-1 at ¶ 2.) Kinwai's showroom space was approximately 5600 square feet. (*Id*. at ¶ 5.)

9

Carolina that are not currently publicly available to the general public on EDGAR."
(Doc. 85-1 at p. 6 ¶ 9.) The request is not limited to the building in which Kinwai leased space, nor is it limited in time. Item 5 asks for any "Documents concerning how the [IHF Center] . . . is managed, owned or operated." (Doc. 85-1 at p. 6 ¶ 5.) This request is not limited in time and would include thousands of emails, discussing scores of other leases and much confidential information. (*See* Doc. 85-4 at 11.)

Kinwai similarly requests "[a]ll documents . . . concerning the purchase of any entity that owns or owned the [IHF Center], including, without limitation, purchase and sale agreements, stock purchase agreements, assignments of contracts, assignments of leases and rents, property management agreements, and board resolutions." (Doc. 85-1 at p. 6 ¶ 1.) This would cover, among other things, drafts of agreements and any emails or other correspondence related to such a purchase. (*See* Doc. 85-1 at 5 (defining Documents" as, *inter alia*, "all recorded or retrievable electronic data or communications such as electronic mail").) It would also require production of confidential agreements and related documents in a complex financial transaction involving lenders, investors, and properties unrelated to the building at issue in this case. (*See* Doc. 85-4 at 9.)

The identity of the owner of IHFC is a matter of public record, (*see* Doc. 53), and it is undisputed that IHFC owns the building in which Kinwai leased showroom space. (*E.g.*, Doc. 31 at ¶ 5.) Moreover, the only persons affiliated with IHFC that either side has identified as taking actions connected with the events at issue are Mr. Krapfel, Ms. Messner, Ms. Cumberbatch, and Mr. Mitchell, each of whom has already testified in

various forms, including verifications, affidavits, and depositions, about their employment. (*E.g.*, Docs. 6-1, 6-3, 35 at 7, 40-6, 66-1.)

Kinwai does not explain why it needs any of these documents, much less this volume of documents. Indeed, its arguments concerning the need for this information are conclusory, usually unsupported by citation to the record, all over the lot, and often incoherent. What it comes down to is Kinwai's desire to undertake a deep-sea fishing expedition in the financial and operational records of IHFC and its affiliates.

It may well be that, within the broad categories of documents and deposition topics, there could be something potentially relevant. That, however, does not justify a fishing expedition. As well summarized by Magistrate Judge Auld of this Court:

> A subpoena imposes an undue burden on a party when a subpoena is overbroad. A subpoena is overbroad if it does not limit the documents requested to subject matter relevant to the claims or defenses. For that reason, courts have frequently concluded that a subpoena for an entire file constitutes an overbroad request where that file likely contains both relevant and irrelevant information.

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No. 1:12CV27, 2014 WL 6686727, at *4 (M.D.N.C. Nov. 26, 2014) (opinion of Auld, M.J.) (internal quotation marks and citations omitted). Mr. Krapfel and the three others have provided information in this case under oath about their employment, and, given the public nature of the identities of IHFC's parent entities and the limited relevance that the whole topic has to the case, the discovery sought is grossly overbroad.

IHFC and the subpoenaed entities have also established that providing the requested discovery is unduly expensive and burdensome. (*See* Doc. 86 at 8-10; Doc.

11

122 at 5-7.) As discussed *supra*, the possibility that a deposition of the SEC would lead to any potentially relevant evidence is almost nil. It would be unduly burdensome to pay the cost and expense of traveling to Washington, D.C., for a fishing-expedition deposition overwhelmingly likely to lead to no potentially relevant evidence. (*See* Docs. 70, 71.) Moreover, Kinwai has not attempted to show the Court that written discovery of the SEC, which the Magistrate Judge specifically found would be less burdensome, (*see* Doc. 75), has been unsuccessful. Finally, one of the purposes of the deposition appears to be to ask questions about communications not on the public record, (*e.g.*, Doc. 72-1 at p. 6 ¶¶ 3-4), which are certain to contain confidential business information. Such a deposition is highly likely to lead to disputes over confidentiality.

The subpoenaed entities have filed verified objections to the subpoenas duces tecum, (*see* Doc. 85-4), which Kinwai has not challenged with anything other than conclusory assertions. The subpoenaed entities have established that the subpoenas were served on the North Carolina registered agents of the subpoenaed entities on June 19, 2015, and required compliance one week later in Charlotte, North Carolina, on June 26, 2015, (Doc. 85-4 at ¶ 4), that the subpoenaed entities maintain their principal places of business in Nevada, (Doc. 85-4 at ¶ 6), where the subpoenaed documents are located, (Doc. 85-4 at ¶ 9), that there would be thousands of responsive documents requiring "countless" hours to retrieve, review for privilege, and organize for production, (*see, e.g.*, Doc. 85-4 at 9 (discussing Item 1)), and that many of the documents are confidential. (Doc. 85-4 at ¶ 23.)

12

It could not be clearer that it would be an undue burden to require these three Nevada companies to produce in North Carolina thousands of documents related to a multitude of topics in one week. Even if there was more time, the significant burden required for production and the resources required to deal with the likely satellite litigation that would result over questions of confidentiality and privilege are completely out of proportion to any tangential relevance the documents might have.

### B.  The Stax Survey

Kinwai contends that the Stax Survey is relevant to its claim for damages because it concerns the importance of the High Point Furniture Market. (*See* Doc. 102 at 16; *see also* Doc. 122 at 4.)  According to Kinwai, it has "significant loss from failure to participate in a market so crucial to its business" and needs the Stax Survey to defend against IHFC's contention that Kinwai's loss is minimal.  (Doc. 102 at 16.)

IHFC admitted that the Furniture Market is important to the market participants. (*See* Doc. 1 at ¶ 10; Doc. 23 at ¶ 10.)  It is undisputed that the Stax Survey concerns other properties in addition to the IHF Center and more than 150 market participants, including properties and participants at a furniture market in Las Vegas, (*see* Doc. 102 at 16; Doc. 85-4 at 14), and there is no reason to believe it includes information about the value of any particular leased space, much less the space Kinwai says it was entitled to keep.[5]

---

[5] IHFC and the subpoenaed entities have provided evidence that the Stax Survey is a "survey of exhibitors and buyers attending the furniture markets in High Point and Las Vegas which Bain Capital Partners L.P. . . . commissioned as part of its evaluation of investing in a venture that acquired various showroom properties in both cities."  (Doc.  85-4 at 14.)

Kinwai's conclusory assertion that "[t]he Stax Survey directly supports Kinwai's position," (Doc. 102 at 16), has no evidentiary support.[6] Even if the Stax Survey is "repeatedly referred to [by] IMC in its public disclosure statement," (Doc. 102 at 16), a factual assertion that is also unsupported by specific citation to evidence of record,[7] that does not make it likely to lead to relevant evidence; this case has nothing to do with a public offering.

IHFC has admitted the fact that Kinwai says it needs the Stax Survey to prove. The subpoenaed entities have established that the Stax Survey is a confidential business document with only tangential relevance to the case. Under these circumstances, the Court will grant the motion for protective order and to quash subpoenas.

**C. Other Issues**

Kinwai contends that IHFC does not have standing to move to quash the SEC deposition subpoena or the subpoenas to IMC. (Doc. 84 at 2; Doc. 102 at 3-4.) Like many of Kinwai's arguments, this is a red herring.

As to the subpoenas to IMC, Kinwai ignores that the motion for protective order and to quash subpoenas is filed by the subpoenaed entities themselves, along with IHFC.

---

[6] Kinwai's "evidence" is a link to a page on the SEC website with what appears to be a blank document an individual would fill out before using the Stax Survey and merely reflects that the Stax Survey appears in IMC's Registration Statement. (*See* Doc. 102 at 16 n.10.)

[7] The Court has no duty to "scour the record" for evidence to support a party's arguments, *see infra* note 9, and it certainly has no duty to wade through thousands of pages on the SEC website for that purpose.

(*See* Doc. 85 at 1; Doc. 85-4 at 2.)  The subpoenaed entities obviously have standing to challenge subpoenas issued to them.  Kinwai's position is without merit and frivolous.

The Court need not decide if IHFC has standing to move to quash a subpoena to the SEC, a third party.  First, it is appropriate for the Court to quash the subpoena on its own motion, in view of its significant overbreadth, the undue burden and costs it would impose on IHFC to travel to Washington, D.C., to attend a fishing-expedition deposition, and the additional satellite litigation related to protecting confidential information such a deposition would likely spawn.  (*See* Text Order July 2, 2015 (noting that the Court has inherent authority to supervise discovery).)  Second, IHFC has also moved for a protective order pursuant to Rule 26(c), (*see* Doc. 70; Doc. 101 at 2), and that rule explicitly allows a party to move for a protective order in an appropriate case.  *See* Fed. R. Civ. P. 26(c).  It can hardly be doubted that a litigant who receives notice of a deposition to be held several hundred miles away of a deponent who is highly unlikely to have any information relevant to the case is being subjected to undue burden and expense, which is one of the many reasons a protective order can issue.  *See id.*

### D.  Costs and Expenses

IHFC moved for its costs and expenses in the original motion to quash the subpoena to the SEC, (*see* Doc. 70 at 3), and IHFC and the subpoenaed entities moved for their costs and expenses in connection with their motion to quash.  (*See* Doc. 85 at 8; Doc. 85-4 at 15.)  Kinwai had notice of those requests and an opportunity to respond both

in briefing and in person at a hearing. (*See* Docs. 72, 101, 102; Minute Entry Aug. 6, 2015.)

Rule 37(a)(5) applies to the award of expenses in connection with a motion for protective order. Fed. R. Civ. P. 26(c)(3). Under Rule 37(a)(5), the Court must require the losing party to pay the winning party's reasonable expenses, including attorneys' fees, unless the losing party's discovery effort was substantially justified or other circumstances make an award of expenses unfair. *See* Fed. R. Civ. P. 37(a)(5).

Kinwai's attempt to depose the SEC was not justified and there are no circumstances making an award of expenses unfair. There was never any real possibility that the SEC would know anything about who Mr. Krapfel and others worked for or about statements made by IHFC in a brief. The financial topics were so overbroad that they constituted an obvious fishing expedition. *See id.*

The document categories in subpoenas to IMC were similarly overbroad, as discussed *supra*. The subpoenas were also unduly burdensome and expensive given the volume of responsive documents and the very short time frame given to comply. Kinwai's explanation for why it needed these voluminous documents did not match the document requests themselves. The document requests were significantly broader than required to obtain information about the one question with possible relevance. Beyond that, Kinwai's arguments were conclusory, and Kinwai never coherently explained the link between the actual documents requested and any issue pending in the case.

While a finding of bad faith and harassment is not necessary to support an award of expenses, *e.g.*, *HSBC Bank USA, Nat'l Ass'n v. Resh*, No. 3:12-cv-00668, 2013 WL 2177873, at *5 (S.D. W. Va. May 20, 2013) (opinion of Eifert, M.J.), it is an additional basis for concluding that the discovery was not justified.  Here, there is a great deal of direct and circumstantial evidence to indicate that Kinwai's real purpose was not to discover potentially useful evidence but rather to harass and annoy IHFC and its affiliates and to increase litigation costs.  This evidence easily supports the finding that Kinwai sought this discovery in bad faith and for the purpose of harassing IHFC and its affiliates, and the Court so finds.

For example, Kinwai waited until one week before the SEC deposition to mail a copy of the SEC subpoena to IHFC's counsel, even though it had served the SEC several weeks before.  (*See* Doc. 70 at ¶¶ 2-3, 8.)  When it finally did mail a copy to IHFC's counsel, it did not include all the attachments.  *See supra* note 2.  The subpoenas to IMC were issued just 12 days before the close of discovery, (*see, e.g.*, Doc. 85-1 at 2; Scheduling Order Oct. 10, 2014), and Kinwai did not timely serve IHFC's counsel with copies; instead, he only learned of the subpoenas when contacted by his client.  (*See* Doc. 85 at 2; Doc. 85-4 at 3 n.1.)

Similarly, no one who really wanted to identify the potential principals of Mr. Krapfel and others would go about it the way Kinwai has done.  A sensible attorney and a responsible client would serve a simple interrogatory or request to admit.  Statements to

17

the Court by Kinwai's counsel that it did file such interrogatories are not supported by the record and were indeed misleading to the Court.[8]

Kinwai has repeatedly filed kitchen-sink briefs supported only by stream-of-consciousness argument. Most of these arguments are unsupported by citation to the record or the law.[9] For example, in one brief, Kinwai contends that "IHFC deliberately lied" about who operated the IHF Center. (Doc. 123 at 1.) It provides no citation to the record to support this very serious accusation, (*see* Doc. 123 at 1), nor does it provide any evidence that IHFC does not own the IHF Center. Kinwai similarly asserts as fact information about IHFC's loans and security agreements, but it again provides no citation to evidence of record. (*See* Doc. 123 at 3-4.) In another brief, Kinwai's counsel spends two pages purporting to explain how buyers of businesses "typically" act "in a standard

---

[8] Ms. Springs has also attempted to make hay with testimony by IHFC's Rule 30(b)(6) witness, Ms. Cumberbatch, that she was employed by IMC Manager, LLC, and that she did not know whether IMC Manager, LLC, had the authority to "manage the entity [IHFC] itself." (*See* Doc. 109 at 5-11; Doc. 109-2 at 60.) Because the meaning of the phrase "manage the entity itself" is completely mysterious, and Ms. Springs did not explain it to the witness, it is not surprising that Ms. Cumberbatch could not provide an answer to that question. Ms. Cumberbatch explained several times the role of IMC Manager, LLC, and answered numerous questions about how IHFC is operated. (*E.g.*, Doc. 109-2 at 28-30.)

[9] The Court has no duty to scour the record—which constitutes hundreds of pages—to find evidence to support or refute a party's factual statements that do not include a reference to evidence of record. *See Stephenson v. Pfizer Inc.*, 49 F. Supp. 3d 434, 437 n.1 (M.D.N.C. 2014) (noting that the Court has no obligation to "investigat[e] the basis of claimed facts"), *appeal docketed*, No. 14-2079 (4th Cir. Oct. 9, 2014); *see also Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (noting that "a court is not required to scour the record in search of evidence to defeat a motion for summary judgment" (internal quotation marks omitted)). Nor does the Court have a duty to conduct legal research to support or refute a party's unsupported legal argument. *Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n. 1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do.").

transaction," but she cites no cases or other authority for her contentions, nor does she ever explain why these "typical" practices make any difference in this case, (*see* Doc. 84 at 7-9), which has nothing to do with buying or selling a business. Some arguments border on incoherent.[10]

Other arguments show a marked disregard for accuracy. For example, Kinwai argued that the motion to quash the subpoenas to IMC should be denied because IHFC did not have standing, (*see* Doc. 102 at 3-4); this completely ignored the fact—apparent from the second sentence of the motion to quash—that the motion to quash and for protective order is filed by both IHFC *and* by the subpoenaed entities. (*See* Doc. 85 at 1.) Kinwai has repeatedly stated that it has tort claims pending, (*e.g.*, Doc. 84 at 5), which is inaccurate. (*See* Doc. 1.) Kinwai's counsel has represented to the Court that Kinwai first

_____

[10] For example, Ms. Springs makes the following argument, which the Court reproduces in full as it is unable to sensibly summarize it:

> Kinwai has now conducted IHFC's 30(b)(6) deposition for which an employee of IMC Manager, LLC was the only corporate witness. IMC Manager LLC actually appears to be the entity that is suing the plaintiff in the name of IHFC Properties, LLC but it has not provided any source of legal authority for such actions and the court has not required any authority. The plaintiff could not come in the court and sue on behalf of its neighbor without some proof it was attorney-in-fact for its neighbor. Plaintiff did not seek to pierce the corporate veil because there is ordinarily no veil when a company publishes on the public record on a federal government website that it owns and operates the [IHF Center] and that it "aims to be a single integrated business." Apparently IHFC has reserved the veil for use only during court appearances. The parent and its affiliates have direct liability and single enterprise liability, both of which plaintiff has pursued.

(Doc. 123 at 4.) As best the Court can tell, Kinwai appears to be arguing that it needs this discovery to prove that the defendant actually in the case, who admits to owning the building, signing the lease, and acting through Mr. Krapfel and others to relocate Kinwai, might nonetheless not be liable to Kinwai for any breach of contract.

learned at Mr. Krapfel's deposition in January 2015 that he was employed by an IMC entity and not IHFC. (*See* Doc. 84 at 6-7.) Yet Kinwai's own Rule 26 disclosures specifically identify Mr. Krapfel as associated with IMC, not IHFC. (*See* Doc. 102-17 at 9.) Kinwai asserts that the documents compelled by the IMC subpoenas "are all related to the High Point facility," (Doc 102 at 14), a statement that is patently untrue. Document Request 9 asks for "any documents that [y]ou provided to the SEC concerning property in High Point, North Carolina," (*see, e.g.*, Doc. 85-1 at 6), and it is clear from Mr. Krapfel's deposition that these entities own other properties in addition to the Center in High Point. (Doc. 130-3 at 16.)

The Court could go on with many more examples. These suffice, however, to support the Court's finding of bad faith.

IV.    **CONCLUSION**

The deposition of the SEC was not reasonably calculated to obtain relevant information, and it would be unduly burdensome and unduly expensive to require IHFC to pay the costs and expenses associated with traveling to Washington, D.C., for a fishing-expedition deposition. The subpoenas to IMC were not reasonably calculated to obtain relevant information and failed to allow a reasonable time to comply, as they demanded the subpoenaed entities produce documents covering many topics spanning many years in less than one week. Responsive documents would be voluminous, (*see* Doc. 85-4 at ¶ 19), and would include confidential commercial and financial information that is not generally available to the public. (*See* Doc. 85-4 at ¶ 23.) Compliance would

be unduly burdensome and expensive, especially given the nature of the information sought in light of the actual disputes in the case.

Under these circumstances, the Court will grant the motion for protective order and to quash the IMC subpoenas, (Doc. 85), and deny Kinwai's motion to vacate and lift the stay prohibiting the SEC deposition. (Doc. 83.) The discovery sought by Kinwai was not justified and is not unfair, and an award of costs and expenses is appropriate.

For these reasons and the reasons stated in open court on August 6, 2015, it is **ORDERED** that Kinwai's motion to lift stay and vacate protective order, (Doc. 83), is **DENIED**. It is further **ORDERED** that the motion for protective order and to quash subpoenas filed by IHFC and the subpoenaed entities, (Doc. 85), is **GRANTED**. IHFC and the subpoenaed entities are entitled to recover reasonable expenses, which the Court will consider pursuant to the schedule established in open court on August 6, 2015.

Signed this the 31st day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE