IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| JIANGMEN KINWAI FURNITURE | ) | |
|---|---|---|
| DECORATION CO. LTD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-689 |
| | ) | |
| IHFC PROPERTIES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This matter arose when a lawyer had something that might have become, with some thought, a decent idea, executed it badly and unsuccessfully, and responded to her own failure by submitting a terrible brief. The lawyer, Venus Springs, and her client, the plaintiff, Jiangmen Kinwai Furniture Decoration Co. Ltd, now face an order to show cause why this Court should not sanction them under Rule 11 of the Federal Rules of Civil Procedure. (Doc. 68.)

At issue is one frivolous argument in one brief. Because the Fourth Circuit has counseled district courts to use great care and caution before sanctioning lawyers under Rule 11 *sua sponte*, *see In re Bees*, 562 F.3d 284, 287 (4th Cir. 2009) (per curiam) (citing *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151, 157 (4th Cir. 2002)), the Court will exercise its discretion and will not impose sanctions for the violation.

In view of the history of this litigation, including briefs, motions, and discovery requests filed by Kinwai and Ms. Springs before and after the Court entered the show

cause order, the Court notes that there is plenary evidence suggesting that Kinwai and Ms. Springs have abused the litigation process. The Court warns both Kinwai and Ms. Springs that the Court will not tolerate any future violations of Rule 11 or other conduct violating the rules and standards applicable in this and all cases.

## BACKGROUND

This case concerns the breach of a lease. Kinwai entered into a lease with the defendant IHFC Properties, LLC, ("IHFC") for showroom space in the International Home Furnishings Center owned by IHFC. (Doc. 1 at ¶¶ 7-11.) In the late summer of 2014, IHFC notified Kinwai that it would exercise a relocation clause in the parties' lease and move Kinwai's space from the fifth floor of the Center to the seventh floor of that building. (*Id.* at ¶¶ 15, 26-27.) Kinwai objected to the relocation, contending that the new space was not "equivalent" to the old space, as required by the relocation clause. (*Id.* at ¶¶ 27-28, 38; *see* Doc. 4 at 1-2.) IHFC eventually moved Kinwai's personal property out of the fifth floor space. (Doc. 1 at ¶¶ 41-43; Doc. 23 at ¶ 43.)

This lawsuit was filed on August 14, 2014, two weeks after IHFC notified Kinwai about the relocation. (Doc. 1.) Consistent with the lease itself, the complaint alleged that Kinwai was the tenant and IHFC was the landlord. (*Id.* at ¶¶ 7-8; Doc 1-1 at 1.) IHFC admits it is a party to the lease, has relied on the language of the lease to defend the case from the beginning, (*e.g.*, Doc. 6 at 1-2), and has brought counterclaims against Kinwai based on the lease. (Doc. 31 at 9-14.)

The identities of the persons acting on behalf of IHFC have been known since the beginning of the case. Kinwai's representative communicated with Richard Krapfel, the

2

leasing agent for IHFC, and Thomas Mitchell, the president of Home Furnishings, before filing suit, (Doc. 16-3 at ¶ 7; Doc. 6-1 at ¶¶ 1-3, 7; *see* Doc. 4-6 at 1), and the relocation letter came from Mr. Krapfel's boss, Julie Messner. (Doc. 4-3; Doc. 6-1 at ¶ 3.) Sharisse Cumberbatch filed an affidavit in support of IHFC's opposition to Kinwai's motion for a temporary restraining order soon after Kinwai filed suit. (Doc. 6-3.) IHFC has put forth these persons as acting on its behalf and has never denied that these persons acted on behalf of IHFC in connection with its dealings with Kinwai and with defendant Zuo Modern Contemporary, Inc. (*See, e.g.*, Doc. 23 at ¶¶ 15, 24; Doc. 72-2 at p. 4 ¶ 3, pp. 7-8 ¶ 10.)

On January 29, 2015, Kinwai moved to amend the complaint. (Doc. 34.) One of the proposed amendments was to add two defendants, International Market Centers LP and International Market Centers, Inc. (*Id.* at 3-4; *see* Doc. 34-1 at ¶¶ 2-3.) Kinwai also sought to add new claims arising out of the way its personal property was handled when it was removed from the fifth floor showroom. (*See* Doc. 34-1 at ¶¶ 116-129.) Kinwai included paragraphs of allegations about corporate entities that owned IHFC in the past and presently, and it sought to hold those entities liable for IHFC's breach of contract. (*See generally id*.) Kinwai also referenced IHFC and the two new entities collectively throughout the complaint, only rarely distinguishing between and among actions taken by IHFC and actions taken by the proposed new defendants.

The Court denied the motion to amend to the extent Kinwai sought to add new defendants, noting that "[t]he complaint does not disclose any facts to support piercing the corporate veil" and "[t]he plaintiff's briefs . . . contain a multitude of statements and

convoluted legal arguments for which the plaintiff has provided no support." (Doc. 41 at 1 & n.1.) The Court did allow Kinwai to file an amended complaint to add factual allegations about events occurring after the date the initial complaint was filed and claims arising from those events. (*Id.* at 1.)

Kinwai and Ms. Springs then filed an amended complaint which attempted to accomplish indirectly what they had failed to accomplish directly. Kinwai recast and changed the new negligence and conversion claims against IHFC arising out of how its personal property was handled as based on the conduct of the other two IMC entities, not IHFC's conduct. (*See* Doc. 45.) Because of the unapproved substantive changes in the amended complaint as filed, the Court granted IHFC's motion to strike the amended complaint. (Text Order at Doc. 67.)

Kinwai also sought reconsideration of the denial of the motion to amend, contending that it intended to add the new defendants "based on direct individual liability." (Doc. 46.) Since Kinwai's statement of intent did not match the actual proposed amended complaint,[1] and since Kinwai again did not explain how non-parties to

---

[1] While there are hints in the proposed amended complaint that Kinwai might have been attempting to assert what Kinwai later called "direct" liability, one has to read between the lines to discern it. One is also unable to tell which defendant did what, since Kinwai treated the two new proposed defendants and IHFC as one actor in its allegations. (Doc. 34-1 at ¶ 13.) *See Bentley v. Bank of Am., N.A.,* 773 F.Supp.2d 1367, 1374–75 (S.D. Fla. 2011) (dismissing claim "for improperly lumping together [the defendants] such that [the defendants] do not have fair notice of the precise nature of the violation that is claimed against them"); *Melegrito v. CitiMortgage Inc.,* No. C11–01765LB, 2011 WL 2197534, at *6 (N.D. Cal. June 6, 2011) (unpublished) ("Under Rule 8(a), grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice....").

4

a lease could be liable for its breach, the motion to reconsider was denied. (*See* Text Order at Doc. 49.)

## THE ARGUMENT AT ISSUE AND THE SHOW CAUSE ORDER

During this same time frame, IHFC sought a preliminary injunction prohibiting Kinwai from exhibiting during the April furniture market in space not owned by IHFC, relying on a provision in the lease. (Doc. 35.) The Court denied the motion for lack of a showing of irreparable harm, (Doc. 48), and IHFC sought reconsideration. (Doc. 50.)

While that motion was pending, Kinwai, through Ms. Springs, filed a motion asking the Court

> to 1) preclude the Defendant IHFC from supporting any motions, interrogatories or anything requiring verifications with affidavits of any persons who are officers or directors of or employed by International Market Centers, LP and/or International Market Centers Inc. (collectively "IMC employees"), 2) strike or exclude consideration of any existing affidavits and verifications of IMC employees filed in this case, and 3) disallow witnesses who are IMC employees from testifying on IHFC's behalf at any hearings.

(Doc. 65 at 1, footnote omitted.) In a brief in support, Kinwai, through Ms. Springs, relied on Federal Rule of Evidence 602 and the doctrine of judicial estoppel. (*See* Doc. 66 at 4-5.) In the Rule 602 argument, Kinwai and Ms. Springs contended that IMC employees could not testify because they were not employees of IHFC and instead worked for an affiliated company. (*See id.* at 8.)

The Court summarily denied Kinwai's motion and issued an Order directing Kinwai and Ms. Springs to show cause why they should not be sanctioned under Rule 11

5

of the Federal Rules of Civil Procedure.  (Doc. 68.)  Specifically, the Court identified the Rule 602 argument as potentially violative of Rule 11(b)(1) and (2).  (*See id.* at 5-6.)

*Sua sponte* Rule 11 show cause orders are unusual, for courts generally and for this Court.[2]  They do not come out of nowhere, and this one did not.  By the time the Court issued the show cause order, it had dealt with Ms. Springs' inadequate brief in support of a motion to amend, her about-face on the theory of liability in the motion to reconsider, and her attempt to file an amended complaint containing facts and claims different from those allowed by the Court.  The brief at issue otherwise contained an "obtuse misreading" of court decisions and a second meritless argument.  (*Id.* at 3.)

The Court gave notice of the potential violation and the possibility of sanctions and gave Kinwai and Ms. Springs an opportunity to submit evidence and briefs.  (*Id.* at 6-8.)  In June, Ms. Springs filed a brief on behalf of both Kinwai and herself.  (Doc. 76.)  Later, separate counsel, K. Matthew Vaughn, entered an appearance for Kinwai in connection with the Rule 11 proceedings, (Doc. 112), and submitted an affidavit from Kinwai's corporate representative, Chong Jian Zhao.  (Doc. 121.)  The Court held a hearing on August 6, 2015, where Ms. Springs appeared representing herself, and Kinwai appeared through Mr. Vaughn and Mr. Zhao.  (Minute Entry Aug. 6, 2015.)

## DISCUSSION

Rule 11(b)(2) prohibits a party or attorney from filing a brief that contains legal contentions that are not warranted by existing law or by a non-frivolous argument for

---

[2] The Court recalls considering such orders in only a very few cases involving lawyers or represented parties in over twenty years on the bench, and has issued orders in even fewer cases.

extending, modifying, or reversing existing law or for establishing new law. *See* Fed. R. Civ. P. 11(b)(2). Rule 11(b)(1) prohibits a party or attorney from presenting an argument "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

## I.     Rule 11(b)(2)

The first issue is whether the legal argument that IMC employees could not testify because they were not employees of IHFC was not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.[3] Kinwai and Ms. Springs have not made any effort to justify this argument, and at the Rule 11 hearing, they essentially admitted that it would violate Rule 11(b)(2) to argue that non-employees cannot testify on behalf of a defendant entity because their status as non-employees somehow prevents them from having personal knowledge. Instead, Kinwai and Ms. Springs contend that Ms. Springs did not make this argument. (*See* Doc. 76 at 1-2.)

First, Kinwai and Ms. Springs contend that the argument in the brief was "an application of Judicial Estoppel to Rule 602," and thus the Court cannot sanction Kinwai and Ms. Springs for the Rule 602 argument alone as it was not "separate" from the judicial estoppel argument. (*See id.* at 1.) The form, structure, and arguments made in the brief at issue belie this contention. In Section II of the brief, titled "The Federal Rules

---

[3] *See In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990) (suggesting that district courts consider the legal basis for filings before considering improper purpose because "whether or not a pleading . . . is well grounded in law will often influence the determination of the signer's purpose").

7

of Evidence Require Personal Knowledge," Ms. Springs quotes from Rule 602, sets forth her misunderstanding of what happened in connection with the Court's rulings on her previous motion to amend, and then asserts that "all of such affidavits and verifications should be stricken and excluded from consideration by this Court." (*See* Doc. 66 at 3-4.) In this Section, Ms. Springs does not use the phrase "judicial estoppel" or advert to its requirements. (*See id.*; *see also* Doc. 37 at 18, making a similar argument without reference to judicial estoppel in another brief.) In Section III of the brief, Ms. Springs contends the evidence should be excluded based on judicial estoppel and does not mention Rule 602. (Doc. 66 at 4-10.)

Second, Kinwai and Ms. Springs assert that "Plaintiff absolutely never once says or even implies that simply because the Defendant's witnesses are actually employed by International Market Centers, that alone disqualifies them from testifying." (Doc. 76 at 2.) This contention is again contradicted by the brief, in which Ms. Springs argued as follows: "Taken [sic] IHFC's claims that were set forth in the background section above as true, employees of the remote owners, International Market Centers cannot have the requisite personal knowledge to provide sworn testimony in favor of IHFC Properties LLC." (Doc. 66 at 4.) In the "background section," Ms. Springs refers to part of an IHFC brief in which IHFC contended that Kinwai should not be allowed to amend its complaint because, *inter alia*, IHFC is the owner and operator of the leased property. (*Id.* at 1-2, citing Doc. 36 at 3-4.) Thus, it is clear that Ms. Springs is contending that an employee of a remote owner that is not itself a party cannot testify because such an employee cannot have personal knowledge.

8

The Court finds by clear and convincing evidence that Kinwai and Ms. Springs made the offending argument and that the Rule 602 argument was frivolous and unwarranted by existing law or a good faith basis for changing the law. The Court further finds that in making the Rule 602 argument, Kinwai and Ms. Springs violated Rule 11(b)(2) of the Federal Rules of Civil Procedure.

## II. Rule 11(b)(1)

The next issue is whether Kinwai and Ms. Springs presented the argument "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The examples mentioned in Rule 11(b)(1) of what constitutes an improper purpose are not exclusive, and a court may infer improper purpose from the circumstances. *In re Kunstler*, 914 F.2d 505, 518-520 (4th Cir. 1990). Repeated filings, the timing of the filing, and the outrageous nature of the argument made may all be relevant circumstances. *Id.* at 519. The Rule 11(b)(1) inquiry goes to the purpose of baseless filings, rather than to their consequences. *Id.* at 518-19.

Witnesses who are unaffiliated with any litigant testify all the time. The argument that employees of a non-party corporation cannot testify in a case where an affiliated company is a defendant is obviously frivolous, and neither Ms. Springs nor Kinwai contends to the contrary. In addition to the frivolous argument, other circumstances existing at the time the brief was filed support an inference of improper purpose. *See* discussion *supra* pp. 3-4.

*Kunstler* counsels that the improper purpose test is generally objective but that it is appropriate to take into account the signer's "subjective beliefs to determine the signer's

9

purpose." 914 F.2d at 518-19. *Kunstler* also says that an attorney's incompetence may excuse conduct that is otherwise sanctionable. *Id.* at 519.

It is possible that Ms. Springs did not intend to argue that Rule 602 alone supports exclusion of the affidavits and testimony at issue and that her failure to link that argument to the judicial estoppel argument was a result of incompetence rather than design. The stream-of-consciousness nature in her preceding briefs, (*see, e.g.*, Doc. 40 at 6), and her inability to draft a simple amended complaint[4] also indicate lack of skill rather than improper purpose.

Based on the brief and the filings of record as of the date the brief was filed, the Court cannot rule out that incompetence played a role. The Court chooses not to consider circumstantial evidence of improper purpose available in later-filed documents in determining whether there is a violation, since the Court did not give explicit notice that it might do so. Giving Ms. Springs the benefit of an inference of incompetence, the Court will not find that the narrow legal argument at issue violated Rule 11(b)(1).

---

[4] To the extent Kinwai had a factual basis for believing that Mr. Krapfel and others were employed by and acting on behalf of other entities as well as on behalf of IHFC, Kinwai could have attempted to bring those entities into the case as defendants in connection with tort claims related to the storage of Kinwai's property. Any competent attorney with minimal litigation experience could draft a complaint accomplishing that goal without including allegations about REITs, public offerings, and mergers. Ms. Springs, however, did not do so. (Doc. 34-1 at ¶¶ 10-12.) As the Court noted in a later order, the motion to amend was denied "because the plaintiff did not allege facts sufficient to impose liability for breach of contract and other contract-based claims on parties who did not sign the contract at issue; nor did the plaintiff clearly allege that the proposed new defendants themselves committed the alleged torts. The facts alleged related to corporate organization, and the amended complaint on its face appeared to assert that the new defendants were liable for IHFC's actions merely because they owned and controlled IHFC." (Doc. 68 at 4, citations to the record omitted.)

### III. Whether to Impose Sanctions

The question then becomes whether the Court should sanction Kinwai, Ms. Springs, or both for violating Rule 11(b)(2) in making the unwarranted and frivolous Rule 602 argument. Sanctions imposed under Rule 11 must be "appropriate." Fed. R. Civ. P. 11(c)(1). The sanction "must be limited to what suffices to deter repetition of the [improper] conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "[I]n choosing a sanction, the guiding principle is that the least severe sanction adequate to serve the purposes of Rule 11 should be imposed." *Miltier v. Downes*, 935 F.2d 660, 665 (4th Cir. 1991) (quotation omitted).

While Rule 11 itself does not enumerate factors that courts should consider in selecting an appropriate sanction, the Federal Rules Advisory Committee has identified several, including

> [w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants . . . .

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse*, § 16(D) (2012) (listing additional considerations).

Kinwai and Ms. Springs make a number of arguments in support of their contentions that this Court should not sanction them under Rule 11.

11

### A. Kinwai

Ms. Springs, on Kinwai's behalf, contends that Rule 11 "specifically states that a represented party cannot be sanctioned for a legal argument." (Doc. 76 at 2, citing Fed. R. Civ. P. 11(c)(5)(A).) That is an incomplete statement of the provisions of Rule 11(c)(5) and is a misleading argument. Rule 11(c)(5) says that the Court "must not impose a *monetary* sanction . . . against a represented party for violating Rule 11(b)(2)." Fed. R. Civ. P. 11(c)(5)(A) (emphasis added). The rule does not prohibit all sanctions, and the language of the rule itself supports the imposition of non-monetary sanctions in an appropriate case. The Advisory Committee's Notes also support this reading. *See Kashyap, LLC v. Natural Wellness USA, Inc.*, No. CBD-11-459, 2012 WL 115447, at *5 (D. Md. Jan. 13, 2012) (opinion of Day, M.J.) ("[A] court may 'impose sanctions or remedial orders that may have collateral financial consequences upon a party, such as dismissal of a claim, preclusion of a defense, or preparation of amended pleadings.'" (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment)).

Kinwai has filed an affidavit from its officer, Mr. Zhao, in which he testifies that neither he nor Kinwai had any involvement in formulating the Rule 602 argument or any of the legal briefs Ms. Springs has filed. (Doc. 121 at ¶¶ 2, 7.) Given that Kinwai is a Chinese company with a limited presence in the United States and no in-house legal counsel, (*see* Doc. 1 at ¶ 1; Doc. 121 at ¶ 4), the Court accepts this testimony for purposes of this decision only and finds that it is inappropriate to sanction Kinwai for one frivolous legal argument.

12

That said, this is an excuse that likely works only once. Kinwai has chosen Ms. Springs to represent it in court, and it is presumed to adopt and approve of her strategy, tactical decisions, and legal arguments. Should there be future Rule 11 violations, even for unwarranted legal arguments, Kinwai may share the consequences. *See Kashyap*, 2012 WL 115447, at *5; *see also Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 (4th Cir. 2010) (collecting cases and noting that "a party voluntarily chooses his attorney as his representative in the action" and cannot "avoid the consequences of the acts or omissions of this freely selected agent" (quotation omitted)); *Coleman v. McHenry*, 945 F.2d 398 (table), 1991 WL 193474, at *2 (4th Cir. 1991) (per curiam) (collecting cases and holding that "[t]here is generally no right to effective assistance of counsel in civil cases"); *Allen v. Barnes Hosp.*, 721 F.2d 643, 644 (8th Cir. 1983) (per curiam) (noting that a civil litigant with retained counsel is not entitled to a new trial in the event of attorney incompetence). If it was not before, Kinwai has been put on notice of Ms. Springs' willingness to make arguments unsupported by law by the show cause order, the Court's statements at the show cause hearing, and other orders of this Court. Future violations could allow a court to infer that Kinwai approves of this tactic.

### B. Ms. Springs

Ms. Springs contends that "[t]he Court's citation of the standard of review of Plaintiff's counsel [sic] argument based on reasonableness is incorrect" and that under *Hunter*, 281 F.3d at 151, she cannot be sanctioned under Rule 11 proceedings initiated by the Court "unless her actions rise to the level of civil contempt." (Doc. 76 at 2.) She then relies on contempt cases to contend that unless she has actually violated a court order, the

13

Court cannot sanction her under Rule 11. (*See id.* at 8-9.) She cites no case for the proposition that Rule 11(b)(2) sanctions cannot be imposed unless an attorney or party has violated a previous court order not to make a frivolous legal argument.

Once again, Ms. Springs paraphrases the actual language of the cited authority in a misleading way that gives her a more beneficial interpretation than that actually stated in the case.[5] In *Hunter*, the Fourth Circuit noted that courts issuing *sua sponte* Rule 11 notices should "use extra care in imposing sanctions on offending lawyers" because of the absence of the 21-day safe harbor, and quoted the Advisory Committee's Notes for the proposition that *sua sponte* show cause orders are for use only "in situations *that are akin to a contempt of court*." 281 F.3d at 151 (emphasis added). "Akin to contempt" is not the same thing as "akin to civil contempt," nor does the *Hunter* court or the Advisory Committee say that the conduct must rise to the level of civil contempt, as Ms. Springs contends. Moreover, the court in *Hunter*, which involved a *sua sponte* show cause order, went on to apply the "objective reasonableness" standard that this Court quoted in its original order. *Id.* at 153; (Doc. 68 at 5.) While that standard is undoubtedly high, it is not as high as Ms. Springs suggests.

Rule 11 does not by its terms or by implication require actual violation of a court order before a court can impose sanctions for a violation of Rule 11(b)(2), and courts do not have to enter orders prohibiting an attorney or a party from making frivolous legal

---

[5] Elsewhere in the brief, Ms. Springs accurately quotes language from the Advisory Committee's Notes and *Hunter*, (*see* Doc. 76 at 8), so it is clear that Ms. Springs was aware of their actual language.

14

arguments before they can be held accountable under Rule 11(b)(2).  While the meaning of the phrase "akin to contempt" has been subject to debate,[6] there is no doubt that sanctions are available under Rule 11(b)(2) when an attorney's violation is egregious, in bad faith, or part of a pattern of meritless or frivolous arguments.  *See, e.g.*, *McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851, 853 (11th Cir. 2010) (per curiam) (upholding sanctions where pro se plaintiff had numerous Rule 11(b) violations); *Young v. City of Providence*, 404 F.3d 33, 39 n.4 (1st Cir. 2005) (collecting cases); *Kashyap*, 2012 WL 115447, at *1-4 (imposing sanctions where defendants filed a motion for reconsideration despite court warning that sanctions might be appropriate if defendants repeated arguments that were previously rejected).

Here, Ms. Springs has made one legal argument unwarranted by existing law.  This is a serious finding that should give Ms. Springs considerable pause as she prepares and signs future briefs and motions in this case and others.  By itself, however, it does not warrant a sanction.  In view of the extra care the Fourth Circuit requires before imposing sanctions *sua sponte*, *see Hunter*, 281 F.3d at 151, and given the limited nature of the specific violation that is the subject of this proceeding, (*see* Doc. 68 at 6-8), the Court finds it appropriate to exercise its discretion in favor of leniency.

Nonetheless, the Court's suspicions are aroused, to say the least.  In addition to the issues of concern which led up to the Order to show cause, *see* discussion *supra* pp. 3-6,

---

[6] *See, e.g., Young v. City of Providence*, 404 F.3d 33, 39-40 (1st Cir. 2005) (rejecting an argument that bad faith or "malign subjective intent" is required before Rule 11 sanctions can be imposed); *Hodge v. Orlando Utils. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2010 WL 376019, at *4-5 (M.D. Fla. Jan. 25, 2010) (collecting and discussing cases).

15

Case 1:14-cv-00689-NCT-JLW   Document 146   Filed 10/13/15   Page 15 of 17

Ms. Springs has since engaged in a discovery war which appears to have been designed to drive up litigation costs. (*See, e.g.,* Doc. 141 at 20-21.) She has filed more briefs with overbroad, ill-considered, stream-of-consciousness arguments unsupported by citation to the record or legal authority. (*See, e.g.*, Doc. 141 at 18 nn.8-9, 19 n.10.) Even in the brief she filed in connection with Rule 11 sanctions, she made misleading arguments. *See* discussion *supra* pp. 12, 14. While the Court does not want to quash skilled and zealous advocacy on matters of legitimate dispute, *see Hunter*, 281 F.3d at 153, 156 n.18, neither does the Court want to continue to wade through motions and briefs which appear to be filed simply for the purpose of harassing IHFC and increasing expenses.[7] The inference of incompetence dissolves in the face of repeated frivolous or weak arguments, which are more appropriately supportive of an inference of bad faith or improper purpose. *See Kunstler*, 914 F.2d at 519.

The Court repeats here what it said in open court to Ms. Springs on August 6: Ms. Springs should not expect similar lenience for any future Rule 11 violations and there are also options beyond Rule 11, should the Court find them appropriate. Going forward, the Court expects that future pleadings, briefs, and motions filed by Ms. Springs and Kinwai

---

[7] Not all of Ms. Springs' briefs are awful, and she has prevailed from time to time. (*E.g.*, Doc. 48.) Even her bad briefs occasionally have a kernel of a thought which would merit consideration if the thought was stated clearly and supported by legal or factual authority. Sometimes by the third or fourth brief on a topic, she has made a coherent argument. These facts indicate that incompetence may not be the problem, and that Ms. Springs may be acting with the intent of spending as little time as possible on her own work, hoping that she can overcome in subsequent briefing the problems with her arguments identified by the defendants. The Court is not required to reward such conduct by giving the litigant repeated chances to construct new arguments. *See Jones v. Dimensions Health Corp.*, No. PWG-13-2250, 2014 WL 1339635, at *3 (D. Md. Apr. 2, 2014).

will be the product of more careful legal research, more precise analysis and explanation, more attention to the record, and at least some editing.

It is **ORDERED** that the plaintiff, Jiangmen Kinwai Furniture Decoration Co. Ltd, and the plaintiff's counsel, Venus Springs, have violated Federal Rule of Civil Procedure 11(b)(2), that this finding is a sufficient deterrent, and that no sanction is appropriate as to Kinwai given its lack of responsibility for the argument or as to Ms. Springs given the limited nature of the specific violation before the Court and the possibility that incompetence, rather than bad faith, was behind the specific violation.

This the 13th day of October, 2015.

_____
UNITED STATES DISTRICT JUDGE