IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JIANGMEN KINWAI FURNITURE DECORATION CO. LTD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:14-CV-689 |
| IHFC PROPERTIES, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

    This is a dispute over who breached a lease for showroom space at the High Point Furniture Market. The tenant, Jiangmen Kinwai Furniture Decoration Co. Ltd, ("Kinwai"), has sued the landlord, IHFC Properties, LLC, ("IHFC"), and the landlord has filed counterclaims. IHFC has offered undisputed evidence that it acted pursuant to an explicit provision in the lease giving it wide discretion to relocate Kinwai's showroom, and Kinwai has offered no evidence to support its contentions that the new space was not equivalent in size and value and that it did not have time to get the new space ready for the next furniture market. The Court will grant IHFC's motion for summary judgment as to Kinwai's claims for relief.

## I. BACKGROUND

The basic facts are undisputed.[1] Several years ago, the plaintiff Jiangmen Kinwai Furniture Decoration Co. Ltd began leasing Space D502 in the International Home Furnishings Center from the defendant IHFC Properties, LLC. (*See* Doc. 1 at ¶¶ 11-12.) In 2009, the lease was revised at Kinwai's request to reduce its space from 12,670 square feet to 8032 square feet. (Doc. 128-5 at 44-45, 52-53.) This left more than 4500 square feet behind Kinwai's showroom, which was difficult to lease. (Doc. 6-1 at ¶ 6.) The lease contained a provision allowing IHFC, at its sole discretion, to relocate Kinwai to a different equivalent space. (Doc. 1-1 at § 1.2.)

Zuo Modern Contemporary, Inc., ("Zuo"), a competitor of Kinwai, leased a nearby showroom in Space D501 for several years. (Doc. 128-6 at 3.) As early as October 2013, Zuo told IHFC it needed a larger showroom space. (Doc. 128-3 at 3; Doc. 128-4 at 79-85.) In early July 2014, IHFC offered Space D502, then occupied by Kinwai, plus the unoccupied area behind Space D502, to Zuo. (Doc. 128-3 at 27-28.) After negotiations over price, (*id.* at 23-27), Zuo and IHFC agreed in July that Zuo would lease the space. (*Id.* at 33; *see* Doc. 128-4 at 92-93.)

Soon thereafter, on July 29, 2014, IHFC notified Kinwai that it would relocate Kinwai from Space D502 on the fifth floor to Space H724 on the seventh floor of the same building, pursuant to the relocation clause in the lease. (Doc. 128-5 at 47; Doc. 4-3.) In addition to Space H724, IHFC offered several alternate locations to Kinwai. (Doc.

---

[1] To the extent they are not, the facts are set forth in the light most favorable to the plaintiff.

4-6 at 1.) On August 11, Kinwai objected to the relocation, contending that the new space was not "equivalent" to the old space as required by the relocation clause and that Kinwai did not have time to get new space ready for the October market. (Doc. 4-4.)

After receiving these objections, IHFC advised Kinwai that same day that it would proceed with the relocation. (Doc. 4-5.) On August 12, IHFC repeated its offer to make different space available to Kinwai if it preferred and advised Kinwai that in the absence of a decision by Kinwai to the contrary, IHFC would prepare Space H724 for Kinwai and would move Kinwai's personal property out of Space D502. (Doc. 4-6 at 2.) There is no evidence that Kinwai responded, and by August 13, IHFC was moving Kinwai's items out of Space D502. (Doc. 4-2 at ¶¶ 4-5.) Kinwai filed this lawsuit on August 14. (Doc. 1.)

After Kinwai's requests for preliminary injunctive relief were denied, (Docs. 9, 22), Zuo moved into Space D502 and the adjoining space, modified the space for its needs, and exhibited there during the October 2014 market. (*See* Doc. 128-4 at 161-67.)

In late August, Kinwai asked IHFC for confirmation that the new space would be ready by September 30 and asked again for different space and for improvements not required by the lease. (Doc. 39-4 at 8.) In early September, Kinwai rerouted its shipments of items to display at the October market from High Point to California. (Doc. 100-1 at 32-33.) In August and September, IHFC moved some walls, painted, and put in new carpet in Space H724. (Doc. 39-3 ¶ 6.) This work was finished in late September. (*Id.*) Kinwai did not hire a contractor or designer to get the space ready for the October

3

market, (*see* Doc. 1 at ¶¶ 33-34), and in September or October it moved its property out of Space H724 and its environs. (Doc. 39-4 at ¶¶ 5-6; Doc. 35-3; Doc. 37-1 at ¶¶ 7-8.)

Kinwai did not participate in the October 2014 market. (Doc. 130-6 at 66.) It rented space from an entity unaffiliated with IHFC for the April 2015 market, (Doc. 35-5), and exhibited there. (Doc. 130-7 at 26.)

## II. CLAIMS

Kinwai asserts claims against IHFC for breaching the lease by moving Kinwai to a different location within the Home Furnishings Center, for constructive eviction, and for breach of the duty of good faith and fair dealing arising out of the lease. (Doc. 1 at ¶¶ 51-71.) Kinwai further asserts claims against IHFC for violating North Carolina's Unfair and Deceptive Trade Practices Act and for civil conspiracy with Zuo. (*Id.* at ¶¶ 72-77, 83-85.) By counterclaim, IHFC asserts that Kinwai breached the lease by failing to exhibit during the October 2014 and April 2015 markets and by exhibiting elsewhere during the April 2015 market. (Doc. 31 at 11-14.)

## III. THE LEASE

Section 1.2 of the lease governs relocation. It gives IHFC substantial rights to relocate Kinwai in IHFC's sole discretion and states that IHFC has the explicit authority to act "in the best interest of the Home Furnishings Center in the conduct of its business" when making a relocation decision. (Doc. 1-1 at 2.) Under the clause, Kinwai has no right to select or veto the new premises. Rather, IHFC has the right to relocate Kinwai to premises selected by IHFC that are "equivalent to or greater than the original Premises in size and value (all as determined by IHFC in its sole discretion)." (*Id.*) The timing is

4

also within IHFC's discretion, requiring only that IHFC notify Kinwai within "a reasonable period of time (as determined by IHFC in its sole discretion) to refixture, redecorate, and prepare to show at [the next] Market." (*Id.*)

The relocation clause follows in full:

> §1.2. Relocation. Lessee acknowledges and agrees that it is essential to the orderly and efficient operation of the Home Furnishings Center by IHFC that IHFC have the right from time to time to relocate lessees in order to achieve optimum utilization of all space in the Home Furnishings Center. Consequently, IHFC shall have the absolute right to relocate Lessee as provided in this Section if IHFC determines in its sole discretion that relocation of Lessee is in the best interest of the Home Furnishing Center in the conduct of its business. IHFC shall exercise its right to relocate Lessee in the following manner: (a) the premises to which Lessee is to be relocated (the "New Premises") shall be selected by IHFC and shall be equivalent to or greater than the original Premises in size and value (all as determined by IHFC in its sole discretion); (b) IHFC shall notify Lessee of its intent to relocate Lessee within a time period prior to the commencement of the next Market such that the Lessee has a reasonable period of time (as determined by IHFC in its sole discretion) to refixture, redecorate, and prepare to show at that Market and identify the New Premises, (c), the New Premises shall be automatically substituted for the original Premises as of the date IHFC gives such notice, (d) all alternations, additions and improvements to the original Premises shall become the property of IHFC, (e) all references in this Lease to the Premises shall thereafter be conclusively be deemed to refer to the New Premises, (f) IHFC, at its expense, shall move Lessee's property to the New Premises, and (g) this Lease shall continue in full force and effect without any other change; provided, however, that until such time as IHFC shall move Lessee's property to the New Premises, the property insurance provisions of §10.1 and the provisions of §10.2 and §10.3 shall continue to apply with respect to any loss of or damage to Lessee's property until such property has been moved to the New Premises.

(*Id.*)

5

The reasons for this broad grant of almost unfettered discretion to IHFC are clear from the record. The Home Furnishings Center is huge: approximately 3.5 million square feet of showroom space in a fourteen-story complex. (Doc. 6-1 at ¶ 2.) IHFC works to make the best use of space for its own economic benefit as well as to increase buyer traffic for all exhibitors. (*E.g.*, *id*. at ¶¶ 7, 12.) When one tenant moves, whether voluntarily or involuntarily, there is often a cascading effect that requires flexibility and management in order to provide maximum use of the premises during the twice-a-year market. (*See id.* at ¶¶ 11, 18, 21; *see generally* Doc. 39-1.)

### A. Kinwai's Claims Against IHFC

#### 1. Breach of Contract and Duty of Good Faith

When "a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties." *Lane v. Scarborough,* 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973). For a contract that is plain and unambiguous on its face, the court will find the parties' intention as a matter of law. *Id.* at 410, 200 S.E.2d at 624.

The relocation provision in this lease is unambiguous. It gives IHFC the "sole discretion" to relocate Kinwai, the "sole discretion" to determine if substitute premises are equivalent in size and value, and the "sole discretion" to determine if Kinwai has enough time to make the new premises ready. (Doc. 1-1 at 2.) Kinwai thus agreed that IHFC could move Kinwai where and when it wanted, subject only to an implied basic duty to exercise its discretion in good faith and with honest judgment. *See Mezzanotte v. Freeland,* 20 N.C. App. 11, 17, 200 S.E.2d 410, 415 (1973) (discretionary contractual powers "must be exercised in a reasonable manner based upon good faith and fair play").

6

IHFC offered evidence that Space H724 contained 5481 square feet as of the date of the relocation letter and that IHFC planned to add 2551 square feet from the empty adjoining Space C759 to give Kinwai the same total area it had in Space D502. (Doc. 39-1 at ¶¶ 18-19; Doc. 130-3 at 47-48, 55-56.) It offered additional evidence that at Kinwai's request, (Doc. 100-1 at 24-25), IHFC proposed alternate spaces on other floors. (Doc. 6-1 at ¶ 22; Doc. 130-3 at 49-51; Doc. 4-6 at 1.) It offered evidence that there was plenty of time to prepare the space for Kinwai to participate in the October market, set to begin some two and a half months later. (Doc. 6-2 at ¶ 7; Doc. 39-3; Doc. 14.) Finally, IHFC offered evidence that significant space behind Space D502 was being wasted, (Doc. 6-1 at ¶¶ 6-7), that Zuo was willing to lease the entire space, (Doc. 39-1 at ¶¶ 11-13), that it had tenants lined up for all the spaces that Zuo would vacate, that the lease changes dependent on the relocation of Kinwai would benefit IHFC by more than a million dollars, (Doc. 6-3 at ¶ 7), and that the relocation of Kinwai provided other benefits to the Home Furnishings Center. (*Id.* at ¶ 8.) This evidence is sufficient to show that IHFC acted in accordance with the lease and in good faith.

Kinwai contends that it produced evidence sufficient to prove IHFC breached both the contract and its duty of good faith and fair dealing in three overlapping ways: that the showroom selected by IHFC for Kinwai's relocation was not equivalent in space and value, that Kinwai did not have enough time to get the space ready for the October market, and that IHFC never turned over finished space to Kinwai. (Doc. 129 at 9, 12, 16.)

7

First, Kinwai contends that because Space H724 only had some 5600 square feet and Space D502 had some 8000 square feet, Space H724 was not equivalent in size. Kinwai points to no disputed questions of fact, (*see id.* at 9-12), and relies on the language of the lease and on testimony by IHFC's leasing agent that the relocation provision required IHFC to provide a relocating tenant "the same square footage, if not more." (Doc. 130-3 at 67.)

While it is undisputed that Space H724 as configured in early August was substantially smaller than Space D502, it is also undisputed that IHFC intended from the beginning to reconfigure Space H724 by moving non-structural demising walls so that it would have the same size as the original showroom. (Doc. 39-1 at ¶ 11B; *see generally* Doc. 6-1 at ¶ 4, explaining "demising walls.") This is in fact what happened. (Doc. 39-3 at ¶ 6.) The contract did not require IHFC to have the finished space available on the day it sent the relocation letter. Given the high degree of discretion IHFC had under the lease to select a relocation space and the fact that the reconfigured Space H724 was similar in size, there was no breach as a matter of law.

Kinwai next contends that IHFC did not give Kinwai enough time to get ready for the market set to begin on October 18. While Kinwai asserts that these issues are "fact related" and inappropriate for summary judgment, it does not point to any disputed questions of fact that support this contention, (*see* Doc. 129 at 12-13), and the contract itself is unambiguous. *See supra* p. 6.

IHFC has offered substantial evidence to support its discretionary decision that two and a half months is enough time to get new showroom space ready. This includes

8

undisputed evidence that Zuo got its new, larger space ready in that time, (Doc. 39-3 at ¶¶ 4-5), that Kinwai only needed sixty-two days to prepare its showroom in another building for the April 2015 market, (Doc. 100-5 at 9-10, showing that work began on February 15 and market began on April 18), and that a contractor who regularly worked at the Home Furnishings Center and who demised the walls in Space H724 for IHFC was available to do Kinwai's work on that same space as late as the end of August. (Doc. 15.)

Kinwai offers only the speculative opinions of its agents that this was not enough time. For example, in response to a question about what Kinwai did to prepare to use Space H724 after it was notified of the relocation, "Raymond" C.J. Zhao said "we look[ed] at the space." (Doc. 100-1 at 21.) Mr. Zhao took no further action, and simply reached the conclusion that "we really don't have enough time. So it's too short from the very beginning." (*Id*. at 22.) There is no evidence that Kinwai contacted designers or contractors when it received the relocation notice in August or that it was unable to obtain those services. Kinwai's evidence that it contacted a few contractors and a designer three weeks later who could not take the job, (Doc. 16-4 at 11-12; Doc. 16-5 at 9-10), is not evidence that those contractors and designers could not have handled the project three weeks earlier. Kinwai's evidence also does not contradict IHFC's evidence that another contractor, Mark Silver, was willing to take on and complete the job in late August. (Doc. 15.) In view of the substantial discretion Kinwai gave to IHFC in the contract to decide the timing of relocations and IHFC's evidence that two and a half months was plenty of time, there was no breach as a matter of law.

In a related argument, Kinwai contends that by the time IHFC finished the

9

demising work, Kinwai did not have time to get the space ready for the October market. (Doc. 129 at 12.) To the extent this claim is before the Court,[2] it is a red herring. First, IHFC has offered evidence from Mr. Silver, a contractor who regularly works at IHFC and who did the demising work on Space H724, that he could have afterwards gotten the space ready for the market, (Doc. 15), and Kinwai has offered nothing to show this was not true. Second, Kinwai has offered no evidence that IHFC prevented Kinwai or its contractor from working on the space at the same time IHFC's contractor was working on it, (*see* Doc. 39-3 at ¶¶ 8-9), and there is nothing to indicate Kinwai ever hired anyone to work on the space. Third, Kinwai decided in early September to redirect the furniture samples on their way to High Point to California, (Doc. 100-1 at 32-33), which shows that Kinwai had decided by then not to exhibit in October, regardless of whether IHFC had the space ready.[3] Finally, the space was ready for occupancy by the end of September, (*see* Doc. 39-3 at ¶ 6), which Kinwai had earlier stated would be enough time for it to get ready for the market. (*See* Doc. 39-4 at 8.) While the space did not have the

---

[2] The amended complaint making these allegations was struck, (Text Order at Doc. 67), and the original complaint, (Doc. 1), does not contain these factual allegations. "A plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam).

[3] Kinwai contends that "[a]n IHFC witness previously testified that a tenant getting a new space six weeks prior to market would be insufficient time to prepare." (Doc. 129 at 13.) Kinwai directs the Court to *IHFC Properties, LLC v. Whalen*, No. 1:10cv568 (M.D.N.C. 2013), Doc. 56 at p. 18 ¶ 36. The Court found no reference to such testimony in that order. Findings by that court that "tenants need time to prepare their showrooms before market," and that "finding tenants who would agree to a lease only six weeks before market . . . was a nearly impossible task," *id.*, are not the same as testimony by a witness. Even if they were, the time needed to find a new tenant is not the same as the time needed to prepare a showroom.

specialty lighting or raised platforms Kinwai wanted, those were not IHFC's responsibility under the lease,[4] and the absence of those improvements did not prevent Kinwai from exhibiting. In view of the substantial discretion Kinwai gave to IHFC in the lease, IHFC's undisputed evidence that the space could have been ready with similar improvements to Space D502 had Kinwai hired Mr. Silver, and the overwhelming and undisputed evidence that Kinwai undertook no timely effort to get Space H724 ready to use at the October market, this argument also fails.

Finally, Kinwai contends that IHFC never delivered the space to Kinwai. (Doc. 129 at 12, 14.) Kinwai relies on IHFC's leasing agent, Richard Krapfel, who testified only that he did not notify Kinwai that the demising work had been completed on Space H724. (Doc. 130-3 at 76.) Kinwai also cites Mr. Zhao's blanket assertion that no one informed him the new space was ready. (Doc. 129 at 12; Doc. 37-1 at ¶ 6.) The contract does not require formal delivery of the premises or any particular method of delivery or notice. (*See* Doc. 1-1 at 2.) There is nothing to indicate Kinwai did not have access to Space H724 whenever it wanted from August to mid-October. It is undisputed that Kinwai's agents visited the space several times, (*e.g.*, Doc. 16-4 at ¶ 3; Doc. 37-2 at ¶ 2), and in early October IHFC emailed Kinwai about re-keying the locks, which confirms that the space was available to Kinwai. (*See* Doc. 37-8.)

---

[4] While Kinwai contends that IHFC breached by failing to deliver a new showroom equivalent to the original showroom in terms of improvements, (Doc. 129 at 11-12; *see* Doc. 100-1 at 34-36), the language of the lease explicitly says otherwise. The lease required Kinwai, not IHFC, to "refixture, redecorate, and prepare" the space for the Market, (Doc. 1-1 at 2), and IHFC had no contractual duty to upgrade the space to Kinwai's specifications.

11

Kinwai also contends that IHFC breached the duty of good faith and fair dealing because of "negotiations behind Kinwai's back with a competitor for over a year followed by executing the relocation through trespass and conversion." (Doc. 129 at 13.) Kinwai contends there are disputes of fact on this issue but argues only law, not facts. Nothing in the lease requires IHFC to notify Kinwai about negotiations with other tenants for Kinwai's existing showroom. (*See* Doc. 1-1.) Kinwai knew that IHFC wanted a long-term lease on the empty space behind Kinwai's showroom. (*See* Doc. 6-1 at ¶¶ 6-7; Doc. 130-3 at 101.) While Mr. Zhao asked Mr. Krapfel in 2012 to let him know if someone else was interested in the 4000 square feet in the back so that he could re-lease it if business allowed, (Doc. 100-1 at 13-16), that request did not give Kinwai a right of first refusal or impose any duty on IHFC. As to the alleged conversion and trespass, IHFC had a contractual duty to enter Space D502 and move Kinwai's furniture and other items upon relocation. (Doc. 1-1 at 2.) It was neither a trespass nor a conversion for IHFC to move Kinwai's furniture.

### 2. Constructive Eviction

Kinwai contends that IHFC constructively evicted Kinwai from Space D502. (Doc. 1 at ¶¶ 60-64.) Kinwai again offers only a conclusory argument unsupported by reference to any evidence about Space D502. (*See* Doc. 129 at 14.) For the reasons discussed *supra*, Kinwai was not entitled to remain in Space D502 once IHFC relocated it to Space H724. A claim for constructive eviction requires proof that the tenant was entitled to beneficial enjoyment of the premises. *Marina Food Assocs., Inc. v. Marina*

*Rest., Inc.*, 100 N.C. App. 82, 92, 394 S.E.2d 824, 830 (1990). In the absence of that evidence, this claim must be dismissed.[5]

### 3. Chapter 75

Kinwai's unfair and deceptive trade practices claims against IHFC under North Carolina law depend on a breach of contract accompanied by other conduct. As there has been no breach of contract and there is no other conduct that can be characterized as unfair or deceptive, this claim also fails. *See Tar Heel Indus., Inc. v. E.I. duPont de Nemours & Co.*, 91 N.C. App. 51, 56-57, 370 S.E.2d 449, 452 (1988) (holding that it is not unfair or deceptive to exercise a contract's termination clause or to seek alternatives to a contractual relationship without informing the other party).

### 4. Civil Conspiracy

Finally, Kinwai brought a civil conspiracy claim against IHFC and Zuo, alleging they acted "in concert" and "pursuant to a common plan or scheme designed to damage" Kinwai. (Doc. 1 at ¶¶ 83-85.) There is no evidence of an agreement to damage Kinwai or of any wrongful conduct, and this conspiracy claim also fails.[6]

### 5. Damages

---

[5] In its brief, Kinwai appears to contend that it was constructively evicted from Space H724. (*See* Doc. 129 at 14.) That claim is not made in the complaint, and "[a] plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment." *Gilmour*, 382 F.3d at 1315. In any event, the argument fails for the same reason Kinwai's argument that IHFC did not finish its demising work in time fails. *See supra* pp. 9-11.

[6] The Court discusses the civil conspiracy claim in greater detail in the order granting Zuo's motion for summary judgment.

13

Because IHFC has no liability to Kinwai, the Court need not address the issues raised by IHFC concerning Kinwai's alleged damages. (*See* Doc. 129 at 17-20.)

### B. IHFC's Counterclaims Against Kinwai

IHFC has also moved for summary judgment as to its second counterclaim. In that counterclaim, IHFC seeks specific enforcement of "Use and Radius Restrictions" in the lease. (Doc. 99 at 2.) Under that provision, Kinwai agreed that during the term of the lease, when the Market was open to buyers, Kinwai would not exhibit in any showroom within five miles of the Home Furnishings Center. (*See* Doc. 35-1 at p. 4 § 4.5.)

As discussed *supra* pp. 6-12, the undisputed evidence establishes that there was a valid contract between IHFC and Kinwai and that IHFC did not breach when it relocated Kinwai. There is no need for a trial on that issue, whether in connection with Kinwai's claims or IHFC's claims.

IHFC did not address the merits of its counterclaim in its brief in support of summary judgment. It simply referred the Court to the briefing filed in connection with its earlier motion for preliminary injunction. (Doc. 100 at 21, referencing Docs. 35, 39, 51, 58.)[7] While that earlier briefing did address questions of contract interpretation, which are a legal matter for the court and not a matter for trial, the earlier briefing did not address a number of defenses raised in Kinwai's answer to the counterclaims. (*See* Doc. 32.) Nor did IHFC address the appropriate summary judgment standard or the standard

---

[7] By adopting other briefs by reference, IHFC has essentially submitted briefing that exceeds the page limits imposed by the Local Rules without Court permission.

14

for a permanent injunction. Even if the Court puts aside IHFC's violation of the Local Rules, IHFC has not established that it is entitled to summary judgment on its Second Claim for Relief.[8]

## CONCLUSION

The undisputed evidence shows that IHFC and Kinwai were parties to a showroom lease and that IHFC did not breach the lease or constructively evict Kinwai when it exercised the substantial discretion it had under the terms of the lease to relocate Kinwai. The undisputed evidence further shows that IHFC did not breach its duties of good faith and fair dealing, commit unfair trade practices, or participate in a civil conspiracy. For these reasons, IHFC is entitled to summary judgment as to all claims against it.

It is **ORDERED** that the defendant IHFC Properties, LLC's motion for summary judgment, (Doc. 99), is **GRANTED in part** and **DENIED in part** as follows:

1. IHFC's motion for summary judgment is **GRANTED** as to all claims against it by the plaintiff, Jiangmen Kinwai Furniture Decoration Co. Ltd, and all of the plaintiff's claims against IHFC will be dismissed with prejudice in a judgment to be entered when appropriate;

---

[8] It seems unlikely that a trial will be needed on all of these defenses. For example, the statute of limitations defense, (Doc. 32 at 5), appears frivolous, as the undisputed evidence indicates that IHFC filed suit within a few months of the conduct giving rise to the cause of action. The Court trusts that pretrial submissions required by Rule 26(a)(3) of the Federal Rules of Civil Procedure and the Local Rules will clarify what issues are actually for trial.

2. It is established for purposes of the trial on IHFC's counterclaims that there was a valid contract between IHFC and Kinwai and that IHFC did not breach the contract when it relocated Kinwai;

3. IHFC's motion for summary judgment is **GRANTED** as to the plaintiff's seventh defense to IHFC's counterclaims.

4. Except as stated herein, IHFC's motion for summary judgment on its counterclaims is **DENIED**.

This the 22nd day of October, 2015.

_____
UNITED STATES DISTRICT JUDGE